IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| MAXCHIEF INVESTMENTS LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:15-CV-153 |
| ) | |
| WOK & PAN, IND., INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO AUTHORIZE ALTERNATIVE SERVICE**

Pursuant to Fed. R. Civ. P. 4(f)(3), Plaintiff Maxchief Investments Limited moves for an order directing service on Defendant Wok & Pan Ind., Inc. by alternative means, namely service on Wok & Pan's United States counsel. As detailed below, Maxchief's attempts to effect service have been futile. In the meantime, while Maxchief has been attempting service, Wok & Pan has been actively harassing Maxchief's United States customers. As a result, service by alternative means is warranted.

1. **Background**

This case arose after Defendant Wok & Pan Ind., Inc. ("Wok & Pan") filed a lawsuit on February 4, 2015, in the United States District Court for the Central District of California against Staples, Inc., alleging that folding tables sold by Staples infringe on certain patents allegedly owned by Wok & Pan (the "Staples Litigation"). *See* Exhibit A to Declaration of Michael J. Bradford ("Bradford Decl."). The Plaintiff in the present action, Maxchief Investments Limited ("Maxchief"), manufactures and sells the folding tables sold by Staples. Upon learning of the

lawsuit against Maxchief's downstream customer, Maxchief filed the present declaratory judgment action against Wok & Pan on June 1, 2015, seeking to invalidate each of the patents asserted against Staples and seeking a declaratory judgment that Maxchief's folding tables do not infringe the claims of the patents.  In view of this lawsuit between the true parties in interest – Wok & Pan and Maxchief - the California court stayed the Staples Litigation.  *See* Exhibit B to Bradford Decl.

Wok & Pan is a Chinese corporation having a principal place of business located in Guangdong Province, China.  Exh. A, p. 2.  It is being represented in the Staples litigation by Tony W. Wong with the David and Raymond IP Law Firm, which is located in Alhambra, California.  Exh. A, p. 1.

Promptly after filing the Complaint in the present action, on June 5, 2015, Maxchief's counsel provided Wok & Pan's counsel with an electronic copy of the Complaint by email and requested that Wok & Pan's counsel accept service of the Complaint on Wok & Pan's behalf.  *See* Exhibit C to Bradford Decl.  In an email dated June 9, 2015, without explanation, Wok & Pan's counsel refused to accept service of the Complaint on behalf of Wok & Pan.  *See* Exhibit D to Bradford Decl.

As a result of Wok & Pan's counsel's refusal to accept service of the Complaint on behalf of its client, and since Wok & Pan is a Chinese corporation, Maxchief proceeded to effect service in accordance with The Hague Convention pursuant to Fed. R. Civ. Proc. 4(f)(1).  The process of serving Wok & Pan in China required securing the assistance of a process server familiar with The Hague Convention procedures and obtaining a Chinese translation of the Complaint and Summons as well as the mailing address of the Wok & Pan's headquarters.  Bradford Decl. ¶6.

2

This was carried out promptly and the Complaint was dispatched to the process server on July 6, 2015. *Id.* Thereafter, the documents were approved by the Chinese Central Authority and sent to the Supreme Court for the People's Republic of China on July 28, 2015. *Id.* As Maxchief understands the process, the Supreme Court examines the documents again and, after approving the documents, sends them to a district court with jurisdiction over the defendant, which court should arrange for personal service.

At the beginning of the service process, the process server advised Maxchief that it could take up to nine months to complete service. *Id.* At Maxchief's request, the process server has made periodic status requests from the Chinese Central Authority – on December 8, 2015, January 22, 2016, and March 11, 2016 – and the Chinese Central Authority responded simply by explaining that service had not yet been completed. *Id.* Finally, on April 19, 2016, Maxchief learned that the service documents were still located at the Chinese Supreme Court and had not yet been provided to the district court. *Id.* Maxchief has requested that the process server obtain an estimated date for completion, but it has been unable to do so. *Id.* It has now been eleven months since Maxchief began its attempt to serve Wok & Pan pursuant to the Hague Convention and the process is still ongoing with potentially extensive time remaining until completion.

In the meantime, while Maxchief attempts to serve Wok & Pan, Wok & Pan has been actively harassing Maxchief's customers via its United States counsel. On August 12, 2015, Wok & Pan's U.S. counsel, Tony Wong, sent a letter to The Coleman Company, Inc. asserting that tables manufactured by Maxchief infringe on Wok & Pan's patents. *See* Exhibit E to Bradford Decl. On October 31, 2015, Mr. Wong sent a letter to Samsonite, LLC asserting that tables manufactured by Maxchief infringe on Wok & Pan's patents. *See* Exhibit F to Bradford

3

Decl. On January 4, 2016, Mr. Wong sent a letter to Wal-Mart Stores, Inc. asserting that tables manufactured by Maxchief infringe on Wok & Pan's patents. *See* Exhibit G to Bradford Decl. On March 29, 2016, Wok & Pan filed another lawsuit in the Central District of California asserting that Lowes Companies and Office Star Products infringe on Wok & Pan's patents by selling Maxchief's tables. *See* Exhibit H to Bradford Decl. Mr. Wong and Mr. Lum are representing Wok & Pan in the litigation.[1] *Id.,* p.1.

Thus, Wok & Pan is actively delaying the present litigation by refusing to accept service of the Complaint, while at the same time taking extensive action throughout the United States against Maxchief's customers in an attempt to damage Maxchief's business.

Maxchief now respectfully requests an Order authorizing an alternative method of serving Defendant Wok & Pan.

## 2. Discussion

### 2.1. The Court should order an alternative method of service.

As Wok & Pan is a foreign entity, service is governed by Fed. R. Civ. P. 4(h)(2). This rule provides that when a foreign corporation is to be served "at a place not within any judicial district of the United States," service must be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). In turn, Rule 4(f) provides as follows:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person

---

[1] Maxchief also notes that Wok & Pan sued Target and Plastic Development Group, LLC in the Central District of California on March 28, 2016, asserting that non-Maxchief tables infringe Wok & Pan's patents. *See Wok & Pan Ind., Inc. et al. v. Target Corporation et al.*, C.D.Ca. Case No. 2:16-cv-02082. The case is presently pending. Mr. Wong and Mr. Lum are representing Wok & Pan in the litigation.

> whose waiver has been filed--may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> \* \* \*
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3). Thus, Fed. R. Civ. P. 4(f)(1) and (2) provide specific methods of serving international defendants, while Fed. R. Civ. P. 4(f)(3) permits the Court to order alternative methods of service. *Id*.

Maxchief is not required to exhaust the methods of service in Fed. R. Civ. P. 4(f)(1)-(2) before requesting authorization for an alternate method of service. "By all indications, court directed service under *Rule 4(f)(3)* is as favored as service available under *Rule 4(f)(1)* or *Rule 4(f)(2)*." *Rio Props., Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (emphasis in original) (citation omitted); *see also Studio A Entm't, Inc. v. Active Distribs., Inc.*, No. 1:06cv2496, 2008 WL 162785, at \*3 (N.D. Ohio Jan. 15, 2008) ("Notably, it has been held that there is no requirement that a party first exhaust the methods contemplated in *Rule 4(f) subsections (1)* and *(2)* before petitioning the court for permission to use alternative methods of service") (emphasis in original). Thus, "the task of determining when the particularities and necessities of a given case require alternate service of process is placed squarely within the sound discretion of the district court." *Dyer v. Can-Truck, Inc.*, No. 3:10 CV 1072, 2011 WL 2532871, at \*2 (N.D. Ohio June 24, 2011) (quoting *Studio A Entm't, Inc.*, 2008 WL 162785, at \*3).

In the instant action, Maxchief has requested Wok & Pan's counsel to accept service, but they refused. Maxchief then attempted Hague Convention service under Fed. R. Civ. P. 4(f)(1), but the process has now been pending for eleven months with no readily apparent end date. In the meantime, Wok & Pan is actively harassing Maxchief's United States customers. In order to move the present litigation forward and avoid further futile, burdensome efforts through the Hague Convention, the Court should order an alternative method of service.

**2.2. The Court should allow service on Wok & Pan's U.S. counsel.**

The Court's inquiry does not end once the decision to order alternative service is made. Indeed, the Court must then choose an appropriate method of alternative service. In making this choice, the Court must select a method of service that complies with traditional notions of due process. To meet this requirement, the method of service "need only be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dyer v. Can-Truck, Inc.*, 2011 WL 2532871, at *2 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Numerous courts have ordered service on a foreign party's United States lawyer under Fed. R. Civ. P. 4(f)(3). See *Dyer v. Can-Truck, Inc.*, 2011 WL 2532871, at *2 ("Plaintiff's service of [the defendant] via email to its defense counsel complies with due process); *Rio Props., Inc.*, 284 F.3d at 1017 (service on counsel who had been consulted by a defendant was "reasonably calculated in these circumstances to apprise [the defendant] of the pendency of the present action"); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 536 (E.D. Va. 2005) ("[r]equiring service on defense counsel is reasonably calculated to apprise defendant of the pendency of this action and afford him an opportunity to respond"); *RSM Prod. Corp. v.*

6

*Fridman*, No. 06 Civ. 11512, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) ("[s]ubstituted service on [defense counsel] is an appropriate means by which to serve [the defendants] within the requirements and circumstances of the present case"); *Forum Fin. Group, LLC v. President, Fellows of Harvard Coll.*, 199 F.R.D. 22, 25 (D. Me. 2001) (authorizing service on foreign defendant's U.S. counsel); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641, 2005 WL 696769, *3 (S.D.N.Y. Mar. 23, 2005) (service on U.S. counsel satisfies due process because counsel "must be in communication with Defendant in relation to the pending legal proceedings … and will know how to locate Defendant").

The only apparent limit on this method of service is that the U.S. lawyer must be in contact with, or know how to reach, the defendant. Contact with the defendant is often presumed. *See Forum Fin. Group, LLC*, 199 F.R.D. at 25 ("[n]otably, [counsel] does not argue that sending service to him would fail to give [defendant] fair notice, nor does he assert that he is not in contact with [defendant]"). It is reasonable to infer that Wok & Pan's U.S. counsel is in contact with Wok & Pan, given that such counsel is currently representing Wok & Pan in three pending lawsuits in California and has sent letters to three different Maxchief customers in recent months on Wok & Pan's behalf.

Based on the foregoing, Wok & Pan's U.S. counsel is clearly in contact with, or capable of contacting, defendant Wok & Pan. Accordingly, service on Wok & Pan's U.S. counsel satisfies due process, because it is "reasonably calculated, under all the circumstances, to apprise [Wok & Pan] of the pendency of the action and afford [it] an opportunity to present [its] objections." *Mullane*, 339 U.S. at 314. Plaintiff therefore requests an Order authorizing it to

7

serve defendant Wok & Pan Ind., Inc. by delivering certified mail or electronic mail to its U.S. counsel, Tony W. Wong.

June 6, 2016						Respectfully submitted,

						s/Michael J. Bradford/
						LUEDEKA NEELY GROUP, P.C.
						Mark P. Crockett, TN BPR No. 19,352
						Michael J. Bradford, TN BPR No. 22,689
						P.O. Box 1871
						Knoxville, TN 37901
						Telephone: 865-546-4305
						Facsimile: 865-523-4478
						Email: MCrockett@Luedeka.com
						Email: MBradford@Luedeka.com

						ATTORNEYS FOR MAXCHIEF INVESTMENTS LIMITED

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2016, a copy of the foregoing Memorandum in Support of Plaintiff's Motion to Authorize Alternative Service was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. The Defendant will be served through its United States counsel by regular U.S. mail at the address below. Parties may access this filing through the Court's electronic filing system.

Tony W. Wong, Esq.
A. Justin Lum, Esq.
David and Raymond IP Law Firm
388 E. Valley Blvd., Suite 223
Alhambra, CA 91801

                s/Michael J. Bradford
                 Michael J. Bradford