UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MAXCHIEF INVESTMENTS LIMITED, )
)
      Plaintiff, )
)
v. ) No. 2:15-CV-153
)
WOK & PAN, IND., INC., )
)
      Defendant. )

MEMORANDUM AND ORDER

This matter is before the Court on the Defendant Wok & Pan, Ind., Inc.'s ("W&P") Motion to Dismiss, [Doc. 28], for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Maxchief Investments Limited ("Maxchief") has responded in opposition, [Doc. 30], and W&P has replied, [Doc. 33]. In addition, the United States Magistrate Judge granted Maxchief's request to conduct limited jurisdictional discovery, [Doc. 44]. Maxchief filed a supplemental brief on April 21, 2017, [Docs. 49 and 51], and W&P responded to the supplement, [Doc. 52]. The matter is ripe for review.

For the following reasons, W&P's Motion to Dismiss, [Doc. 28], is GRANTED. Accordingly, this action is DISMISSED WITHOUT PREJUDICE.

**I.    BACKGROUND**

Maxchief and W&P both have their principal places of business in Guangdong Province, China. Maxchief designs, manufactures and sells plastic folding tables. Maxchief distributes its UT-18 table through Meco Corporation ("Meco") in Greeneville, Tennessee. Meco is the sole United States distributor of this particular table. Meco sells and distributes the UT-18 table under

1

its own name to third-party retailers, and the tables display Meco's name and contact information. One third-party retailer is Staples, Inc. ("Staples"). The third-party retailers, including Staples, sell the tables to the public.

W&P competes with Maxchief in the folding table market and holds 4 patents for folding tables: (1) United States Patent No. 5,957,061, entitled "Banquet Table" (the "'061 patent"); (2) United States Patent No. 8,881,661, entitled "Foldable Table" (the "'661 patent"); (3) United States Patent No. 8,931,421, entitled "Foldable Table" (the "'421 patent"); and (4) United States Patent No. 9,089,204, entitled "Foldable Table" (the "'204 patent"). W&P acknowledges that it has sold and shipped folding tables covered by these patents through distributors and retailers in Tennessee.

W&P filed a lawsuit against Staples on February 4, 2015, in the United States District Court for the Central District of California. W&P alleges that Staples' sale of the UT-18 table infringes on its patents. In the complaint's prayer for relief, W&P seeks

> [a] grant of permanent injunction pursuant to 35 U.S.C. 283, enjoining Defendant and each of its agents, servants employees, principals, officers, attorneys, successors, assignees and all those in active concert with Defendant, including related individuals and entities, customers, representatives, OEM's, dealers and distributors, from further acts of (1) infringement, (2) contributory infringement, and (3) active inducement to infringe with respect to the claims of the Asserted Patents.

[Doc. 31-2 at 19].

On April 16, 2015, Staples sent a letter to Meco requesting Meco to defend and indemnify Staples in the lawsuit. In turn, Meco sent a letter to Maxchief on April 27, 2015, requesting that Maxchief defend and indemnify Meco and Staples. As a result, Maxchief's counsel wrote a letter to W&P on May 27, 2015, advised W&P that it manufactures the UT-18 table, and denied infringement.

2

Then, Maxchief filed the instant action on June 1, 2015. In the Amended Complaint, filed on September 2, 2016, Maxchief seeks a declaratory judgment that all of W&P's patents are invalid and that Meco's UT-18 table and other Maxchief tables do not infringe W&P's patents. Maxchief also asserts an unfair competition claim under the Lanham Act, 15 U.S.C. § 1125. Finally, Maxchief states a Tennessee state law claim for tortious interference with business relations. The Amended Complaint states that "[s]ubject matter jurisdiction is conferred on this court by 28 U.S.C. §§ 1338, 2201 and 2202, and under this Court's pendent jurisdiction over related state claims arising under the same operative facts and circumstances pursuant to 28 U.S.C. § 1367." [Doc. 23 at 1-2].

On August 25, 2015, the United States District Court for the Central District of California stayed the Staples action pending final disposition of this action. In that decision, the Court stated,

> This patent infringement suit against a down-stream customer in a district where the manufacturer is not subject to personal jurisdiction is a clear-cut example of the sort of abuse the customer-suit exception is designed to avoid. The "true defendant" in this action is Maxchief, who is amenable to suit in Tennessee, but not subject to personal jurisdiction in this district. The [Tennessee] Action, therefore, "takes precedence over a suit by the patent owner against customers of the manufacturer," and this action must give way to the [Tennessee] Action.

[Doc. 23 at 7].[1]

According to the Amended Complaint, W&P had previously sent Ace Hardware Corporation a letter alleging patent infringement for tables sold. After the filing of the instant case, W&P proceeded to send The Coleman Company, Inc., Samsonite, LLC, and Wal-Mart Stores, Inc. similar letters alleging these companies infringed W&P's patents for selling certain

---

[1] Maxchief appears to cite this portion of the Central District of California's ruling so this Court will imply that this Court has personal jurisdiction over W&P. Just because that Court opined that a Tennessee court would have personal jurisdiction over Maxchief, it does not mean that it opines this Court has personal jurisdiction over W&P. They are separate entities with separate contacts, and, thus, a separate jurisdictional analysis must be conducted.

tables. Particularly, the January 4, 2016, letter to Wal-Mart Stores, Inc. ("Wal-Mart") claimed that Wal-Mart had infringed on the patents which are the subject of this suit for selling an Office Star table with product identifier BT-06FQ as well as a Mainstays and a Cosco table. Maxchief responded in two separate letters dated January 21, 2016. It stated that the Mainstays and Cosco tables were manufactured by it and distributed by Ameriwood Industries of Wright City, Missouri. Maxchief also informed W&P that it manufactured the Office Star BT-06FQ table. The Amended Complaint does not state explicitly who distributes the Office Star BT-06FQ table. The Court gleans that it is Office Star Products of Ontario, California because on March 29, 2016, W&P sued Lowe's Companies, Inc. and Office Star Products in the United States District Court for the Central District of California and alleges that these two infringed the patents which are the subject of this suit for sale of the Officer Star BT-06FQ table. The United States District Court for the Central District of California stayed that action pending the outcome in the instant case.

W&P filed the current Motion to Dismiss for lack of personal jurisdiction. In the alternative, W&P moves to transfer venue pursuant to Title 28 United States Code section 1404(a). Finally, W&P moves to dismiss the unfair competition claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After time to conduct jurisdictional discovery, the parties filed supplements. The matter is now ripe for review.

## II. ANALYSIS

### A. Whether the Court Has Personal Jurisdiction Over W&P

#### 1. Introduction

The Court must now determine whether it has personal jurisdiction over W&P, a foreign company. The parties agree that Federal Circuit law governs the personal jurisdiction inquiry. *See Elecs. for Imaging v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("We thus apply Federal Circuit law to the patent invalidity claim presented, even in the context presented here, where defendants in
4

the declaratory judgment are the patentees."). There are two types of personal jurisdiction: specific and general. The Court need only address specific jurisdiction because Maxchief does not assert W&P is subject to general personal jurisdiction in Tennessee.[2]

## 2. Specific Personal Jurisdiction

To determine whether the Court has specific personal jurisdiction over a foreign defendant, the Court must engage in a two-step analysis. First, the Court must determine whether the "forum state's [Tennessee] 'long-arm' statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process." *Coyle*, 340 F.3d at 1349. In this case, Tennessee's long-arm statute extends personal jurisdiction to the fullest extent permitted by the Due Process Clause. *See Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985) (recognizing that Tennessee's long-arm statute "expanded the jurisdiction of Tennessee courts to the full limit allowed by due process"); *see also* Tenn. Code Ann. § 20-2-214(a)(6) (permitting service over nonresidents for any action or claim for relief arising from "any basis not inconsistent with the constitution of [Tennessee] or the United States"). Because Tennessee's long-arm statute is co-extensive with the limits of the Due Process Clause, "the personal jurisdiction analysis in this case narrows to one inquiry: *whether jurisdiction comports with due process*." *Coyle*, 340 F.3d at 1350 (emphasis added).

As the Federal Circuit has stated, "the exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain 'minimum contacts' with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co.*, 326 U.S. at 316). In general, there must be "some act" by which the defendant "purposefully avails" itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471

---

[2] Maxchief stated that it did not have sufficient information to determine whether W&P was subject to general jurisdiction. It reserved the right to assert general jurisdiction after jurisdictional had been conducted. [Doc. 30 at 11]. After discovery was completed, Maxchief stated, "The findings during jurisdictional discovery do not have a significant effect on Defendant's request to have the case dismissed (as opposed to transferred)." [Docs. 48 & 51 at 1]. As such, the Court need not address general personal jurisdiction.

5

U.S. at 475.

The Federal Circuit has adopted a three-part test for determining whether specific personal jurisdiction exists. *Coyle*, 340 F.3d at 1350 (citations omitted). Under that test, courts look at whether:

    (1)    the defendant purposefully directed its activities at residents of the forum state,

    (2)    the claim arises out of or relates to the defendant's activities with the forum state, and

    (3)    assertion of personal jurisdiction is reasonable and fair.

*Id.* (citations omitted). As the Federal Circuit has explained, the "first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." *Id.* (citations omitted). The defendant bears the burden of proof with respect to the last prong. *Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The Court will analyze each particular claim in turn.

### a. Declaratory Judgment Claims

As the Federal Circuit has stated, "[i]n the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citations omitted). In an ordinary patent infringement suit, "the nature and extent of the commercialization of the accused products or services" is a relevant inquiry. *Id.* However, in the context of an action seeking a declaratory judgment of non-infringement, the jurisdictional inquiry is guided by different factors. *See id.* In the declaratory judgment context, "the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrong restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit.'" *Id.* (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). As the Federal Circuit has explained, the "nature of the claim in a declaratory judgment action is to clear the air of infringement charges . . . [s]uch a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum . . . ." *Avocent*, 552 F.3d at 1332 (quotations omitted). Rather, the

6

relevant inquiry in patent declaratory judgment actions is the extent to which the "defendant patentee purposefully directed [patent enforcement activities] at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities. *Id.* Because this case involves a declaratory judgment action on the non-infringement of a patent, the Court is guided by *Avocent*.[3]

As an initial matter, the Court recognizes that threats of infringement directed at the forum state are not enough in itself to satisfy the "minimal contacts" requirement. *See Coyle*, 340 F.3d at 1351 (recognizing that "based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction."); *see also Red Wing Shoe*, 148 F.3d at 1361 (holding that three cease-and-desist letters alone "do not suffice to create personal jurisdiction"). "Rather, 'other activities' distinct from threats of infringement are required for a patentee to be subject to personal jurisdiction in the forum." *Coyle*, 340 F.3d at 1351 (citing *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003)).

As the Court noted earlier, according to the Amended Complaint, W&P sent four infringement letters.[4] W&P sent letters to Ace Hardware Corporation, The Coleman Company, Inc., Samsonite, LLC, and Wal-Mart Stores, Inc. These letters, however, are not enough in and of themselves to establish specific personal jurisdiction in a declaratory judgment action on the non-infringement of a patent. *See Silent Drive*, 326 F.3d at 1202 ("letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction") (quoting *Red Wing Shoe*, 148 F.3d at 1359-60). Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202. The issue is whether W&P engaged in "other activities" that "relate to" the enforcement of the subject patents in the forum state, i.e. Tennessee. *See Avocent*, 552 F.3d at 1334. The Federal Circuit has defined "other activities" as the following:

> [T]he crux of the due process inquiry should focus first on *whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters* or mere attempts to license the

---
[3] The Court has reviewed all cases cited by both parties, including *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194 (Fed. Cir. 2003). After such review, the Court determines that *Avocent* is the most applicable to the present case.
[4] The Court has used the terms "infringement letters" and "cease-and-desist letters" interchangeably.

7

Case 2:15-cv-00153-JRG-MCLC   Document 53   Filed 09/29/17   Page 7 of 19   PageID #: 562

> patent at issue there. Where a defendant-licensor has a relationship
> with an exclusive licensee headquartered or doing business in the forum
> state, the inquiry requires close examination of the license agreement. In
> particular, our case law requires that the license agreement contemplate
> a relationship beyond royalty or cross-licensing payment, such as granting
> both parties the right to litigate infringement cases or granting the licensor
> the right to exercise control over the licensee's sales or marketing activities.

*Breckenridge*, 444 F.3d at 1366 (Fed. Cir. 2006) (emphasis added). These "other activities" must "relate to the enforcement or the defense of the validity of the relevant patents." *Avocent*, 552 F.3d at 1334. These "other activities" include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.*; *see also Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee who engaged in "extra-judicial patent enforcement," which included enlisting a third party to remove the defendant's products from a trade show that was being held in the forum state); *Breckenridge*, 444 F.3d at 1366 ("Here, in addition to sending letters into the forum state, . . . Metabolite [the patentee] has entered into an exclusive license with PamLab, a company that . . . conducts business in Florida [the forum state]); *Silent Drive*, 326 F.3d at 1202 (noting that "[e]xclusive license agreements with respect to the patents at issue with residents of the forum . . . have, at least in some circumstances, been held sufficient to confer personal jurisdiction"); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) (finding jurisdiction over a patentee who had previously "granted [the plaintiff] an exclusive license to practice the inventions claimed in the patents"); *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (finding jurisdiction over a patentee who "contracted with [an exclusive distributor] to sell [the] patented products in [the forum State]" where the agreement was "analogous to a grant of a patent license").

Maxchief argues that the Court has specific personal jurisdiction because in addition to the infringement letters: (1) W&P has appointed distributors to sell and ship its tables in Tennessee, and (2) W&P has filed a patent infringement lawsuit, i.e. the Staples lawsuit, requesting an injunction against further sales of Meco's tables.

Regarding Maxchief's first argument, it is true that W&P admitted "it has sold and shipped folding tables covered by the Wok & Pan patents through distributors and retailers in Tennessee."

8

[Doc. 29 at 5]. It is also true that the Federal Circuit held that "[e]ntering into an exclusive distributorship agreement authorizing the distribution of its trademarked and patented products [in the forum state] is sufficiently analogous to entering into a patent license agreement which [the Federal Circuit has] previously concluded is a sufficient contact, in combination with cease-and-desist letters, to comply with the requirements of due process." *Genetic Implant*, 123 F.3d at 1459. However, unlike Maxchief and Meco's exclusive distributorship in regards to the UT-18 table, there is no evidence in the record that W&P has entered into any exclusive distributorship agreements with distributors in Tennessee. The exclusive distributor agreement was the "most significant" determinative factor in *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d at 1458; *see also Red Wing Shoe*, 148 F.3d at 1362 (declining to find specific personal jurisdiction over a patentee with thirty-four non-exclusive licensees selling the patented product in the forum state because "none of [the patentee's] licenses requires it to defend or pursue infringement actions involving the [relevant] patent, nor requires [the patentee] to be so nearly involved with its licensees as was the case with the exclusive licensee in *Akro*."). In addition, the Federal Circuit has held that commercial activity does not qualify as "other activities" to support specific personal jurisdiction. *Avocent*, 552 F.3d at 1332, 1335 ("What the patentee makes, uses, offers to sell, sells, or imports are of no real relevance to the enforcement or defense of a patent").

Regarding Maxchief's second argument, Maxchief primarily refers the Court to its argument regarding personal jurisdiction for the tortious interference with business relationship claim. *See* [Doc. 30 at 13-17]. In addition, Maxchief relies heavily upon *Silent Drive, Inc. v. Strong Industries, Inc*. 326 F.3d 1194 (Fed. Cir. 2003).[5] However, it predominantly relies upon the portion of that opinion which relates to Count I, not Count III which sought a declaration for patent invalidity and non-infringement. In Count I, Silent Drive, Inc. sought declaratory relief that "'[p]laintiff, as non-party to the Texas case, and a person who was not notified, on whom process was not served, and over whom jurisdiction was not present is not and cannot be bound by the injunction entered by the State Court in Texas.'" *Id*. at 1199-1200 (citing the Complaint). In that section of the opinion deciding jurisdiction over Count I, the Federal Circuit applied the law of the

---

[5] As stated earlier, the Court has reviewed all cases cited by the parties. However, the Court declines to comment on each case because those cases are either inapplicable or distinguishable.

9

regional circuit, that being the Eighth Circuit, to determine jurisdiction. *Id*. at 1201, 1203-06; *see also Calder v. Jones*, 465 U.S. 783, 788 (1984). This Court must apply Federal Circuit law in determining personal jurisdiction in a declaratory judgment action for patent validity and non-infringement. *Coyle*, 340 F.3d at 1348. In the portion of *Silent Drive* deciding jurisdiction over the patent declaratory judgment claim, the Federal Circuit determined that cease-and-desist letters, a news release, an injunction for misappropriation of trade secrets, and sporadic contacts were not sufficient "other activities" to comply with due process. *Silent Drive*, 326 F.3d at 1202.

This Court determines that *Avocent* is more instructive. *See generally* 552 F.3d at 1331-40. In that case, Avocent primarily argued that Aten International was subject to personal jurisdiction in Alabama based on the alleged availability of various Aten International products for sale in the forum state. *Id*. at 1337. The Federal Circuit stated that "the only contacts between Aten International and Alabama that are relevant are those that relate in some material way to the enforcement or defense of the patents at issue." *Id*. at 1338. The court further stated that Avocent fails to identify any such activities. *Id*. "This critically undermines its assertion of specific jurisdiction." *Id*. Avocent relied on *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996), but the court found that unavailing. *Id*. at 1339. In *Viam*, "the patentee's relevant jurisdictional activity included enforcement proceedings involving the same patent in the same court against other alleged infringers—a significant contact with the forum materially related to the enforcement of the relevant patent." *Id*. (citing *Viam*, 84 F.3d at 430). In *Avocent*, however, Aten International and its subsidiary previously enforced the patents against other parties in other courts, not in courts in the forum state. *Id*. The Federal Circuit stated that Avocent failed to allege that Aten International attempted to enforce the patents in any Alabama court. *Id*. Furthermore, the court stated that it was "aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else." *Id*. Thus, Aten International did not purposefully direct its activities at residents of the forum and the action did not arise out of or relate to those activities. *Id*. at 1340.

Here, W&P sought to enforce its patents against Staples in California. It did not seek to enforce those patents in the forum state of Tennessee. Thus, similar to *Avocent*, it sought to enforce the patents against other parties in other courts. As such, analogous to the holding in *Avocent*, this Court does not have personal jurisdiction over W&P on the declaratory judgment claims.

10

This Court notes that there is an additional fact present here that was not discussed in the *Avocent* case. W&P, in the Staples Complaint, seeks a permanent injunction enjoining Staples "and all those in active concert with [Staples], including . . . distributors, from further acts of (1) infringement, (2) contributory infringement, and (3) active inducement to infringe with respect to the claims of the Asserted Patents." [Doc. 31-2 at 19]. The complaint does not name Meco party-defendant. However, Meco, which is located in Tennessee, is the exclusive distributor of the UT-18 table. *Avocent* states that "if the defendant patentee purposefully directs activities at the forum which relate in some material way to the enforcement or the defense of the patent, those activities *may* suffice to support specific jurisdiction." 552 F.3d at 1336 (emphasis added). Nonetheless, the court in *Avocent* immediately expounded upon that statement by giving examples. *Id*. "[W]hen the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by such license or contracting party in the forum, the patentee's contractual undertaking may impose certain obligations to enforce the patent against infringers." *Id*. By that conduct, "the patentee *may* be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent." *Id*. (emphasis added). Here, the facts do not conform to the examples given by the *Avocent* Court. There is no evidence that W&P, the patentee, entered into any exclusive agreements. Instead, it is Maxchief which has the exclusive relationship with Meco, which is located in the forum. Furthermore, there is no evidence in the record as to Meco's and Maxchief's relationship other than exclusive distribution of the UT-18 table. It is unclear whether that agreement includes an indemnity clause.

This Court is bound by Federal Circuit precedent on this issue. *Avocent* does not contemplate the factual scenario at bar. It is unclear whether the other suits against other parties outside the forum state mentioned in *Aovcent* sought injunctive relief against an exclusive distributor. In addition, the examples given of exclusive agreements relate to the exclusive agreements of the patentee, not the alleged infringer. What is clear from *Avocent* is that when other suits are filed against other parties in forums other than the forum state, that is not enough to constitute "other activities" to comply with due process. Again, this Court is bound by that precedent. It could be that the Federal Circuit will extend its ruling to the situation at bar. However, that is the purview of the Federal Circuit, not this Court.

Furthermore, it appears to this Court that this decision is correct for policy reasons. The

11

primary purposes for the creation of the Federal Circuit were to provide greater uniformity in the substantive law of patents and to prevent the inevitable forum shopping that results from conflicting patent decisions in the regional circuits. *Christianson v. Colt Indus. Operating Corp.*, 798 F.2d 1051, 1058 (7th Cir. 1986) (citing *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422 (Fed.Cir.1984) (en banc)); *see also* S.Rep. No. 275, 97th Cong., 2d Sess. 19, at 5–6, reprinted in 1982 U.S.Code Cong. & Admin.News at 15–16; H.R.Rep. No. 312, 97th Cong., 1st Sess. 41, at 20–23. In the Amended Complaint, Maxchief accuses W&P of forum shopping. However, the same could be said for Maxchief.

In the case at bar, Maxchief sued for declaratory judgments that it did not infringe on W&P's four patents by the manufacture, use, sale and offer for sale of various tables. [Doc. 23 at ¶¶ 46, 47, 50, 51, 54, 55, 58, and 59]. Maxchief does not limit its declaratory judgment actions for patent validity and non-infringement to just the UT-18 table distributed by Meco. In all declaratory judgment action counts, Maxchief states that W&P's allegation that various Maxchief tables infringe its patents and W&P's suits against Staples, Lowe's and Office Star Products create a case and controversy between Maxchief and W&P concerning whether Maxchief infringed one or more of the patents and whether the patents are invalid. [Doc. 23 at ¶¶ 46, 50, 54, and 58]. Despite seeking a ruling on various tables manufactured by Maxchief and distributed by other distributors located outside Tennessee,[6] Maxchief chose to file suit in a forum where just one of its distributors, Meco, for just one particular table, the UT-18 table, was located. Maxchief only relies upon the Staples litigation in arguing this Court has personal jurisdiction because the Staples case's allegations relate just to the UT-18 table. The Lowe's and Office Star Products case relate to other tables manufactured by Maxchief but distributed by distributors outside of Tennessee, i.e., Office Star Products located in California. Based on Maxchief's reasoning, theoretically, Maxchief could have filed a declaratory judgment action for patent validity and non-infringement in any state where one of its distributors is located. This theory begs for forum shopping.

This Court also notes that just because this Court does not have personal jurisdiction, this does not foreclose the availability of a domestic forum. *See Avocent*, 552 F.3d at 1339. Pursuant to Title 35 United States Code section 35, a foreign patentee is subject to jurisdiction in at least one state or the District of Columbia. 35 U.S.C. § 293 (2017). In addition, either of those courts

---

[6] The distributor for the Cosco and Mainstays tables sold at Wal-Mart is Ameriwood Industries of Missouri.

could have pendent personal jurisdiction over non-patent claims. 28 U.S.C. § 1367(a); *see Coyle*, 340 F.3d at 1348 n.1.

In sum, the Court finds that Maxchief has failed to allege "sufficient activities related to the claim of patent non-infringement and invalidity" to support an assertion of specific personal jurisdiction. *Silent Drive*, 326 F.3d at 1202.

### b.     Federal Unfair Competition Claim

The Court must now determine whether there is personal jurisdiction over the federal unfair competition claim. Maxchief alleges unfair competition in violation of Title 15 United States Code section 1125 based on W&P's "baseless assertions of patent infringement" against Maxchief's customers in cease-and-desist letters and in lawsuits. [Doc. 23 at ¶ 69]. In Maxchief's Response, it states that it "no longer intends to rely upon the baseless lawsuits in its unfair competition claims." [Doc. 30 at 9]. In addition, Maxchief fails to address whether this Court has personal jurisdiction over this claim. Instead, Maxchief addresses the merits of the claim and whether the Court has pendent jurisdiction. "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. Nonetheless, the Court will address whether it has personal jurisdiction over this claim.

*Avocent* addressed a similar issue and determined that there was no personal jurisdiction over Avocent's Lanham Act claim for unfair competition. 552 F.3d at 1340. The *Avocent* Court cited *Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d at 1362, for the proposition that because this non-patent issue was intimately linked to patent law, Federal Circuit law applied. *Avocent*, 552 F.3d at 1340. Moreover, because "Aten International's only activity pertinent to Avocent's Lanham Act claim consist[ed] of sending letters alleging patent infringement," *id*., and because *Breckenridge* provides that "'a patent owner may, without more, send cease and desist letters to a suspected infringer, *or its customers*, without being subjected to personal jurisdiction in the suspected infringer's home state,'" *id*. (quoting *Breckenridge*, 444 F.3d at 1362), the *Avocent* Court found that the three letters attributed to Aten International did not subject it to personal jurisdiction in Alabama. *Id*. Aten International sent the first letter to Avocent, presumably in the forum state. *Id*. at 1327. Aten International sent the second letter to an Aten International customer in a state outside the forum state. *Id*. It sent the third letter to Avocent in a state other than the forum state. *Id*. Here, the only bases for the claim are the cease-

13

and-desist letters. The matter here is even more attenuated than the matter in *Avocent* because all of the letters here were sent to Maxchief's customers in states other than the forum. Thus, this Court does not have personal jurisdiction over the federal unfair competition claim. *Id.* at 1340; *see also Breckenridge*, 444 F.3d at 1362.

### c. Tortious Interference with Business Relations Claim

The Court must now determine whether there is personal jurisdiction over the tortious interference with business relations claim. Before reaching this issue, however, the Court must first determine whether there is subject matter jurisdiction over this claim, for if there is no independent federal subject matter jurisdiction over this claim, then the Court need not reach the question of personal jurisdiction. *See Silent Drive*, 326 F.3d at 1203; *see also Avocent*, 552 F.3d 1324.

In the original Complaint, Maxchief only alleged several declaratory judgment action claims for patent validity and non-infringement. It stated the bases for the Court's subject matter jurisdiction was sections 1338, 2201 and 2202 of Title 28 of the United States Code. [Doc. 1 at ¶ 3]; *see generally* 28 U.S.C. §§ 1338 (jurisdiction in patent matters), 2201 (jurisdiction in declaratory judgment actions) and 2202 (declaratory judgment actions) (2017). Understandably, Maxchief did not list section 1367, which creates the Court's pendent jurisdiction, for its claims. In the Amended Complaint, Maxchief adds another declaratory judgment claim for patent validity and non-infringement, it adds the unfair competition claim pursuant to Title 15 United States Code section 1125, and it adds a claim for "tortious interference with business relations" claim. [Doc. 23 at ¶¶ 61-67]. The Amended Complaint does not cite a statute or case to support the tortious interference claim. It can only be a claim pursuant to Tennessee state common law.[7] This conclusion is bolstered by the fact that in the Amended Complaint, Maxchief lists the bases for this Court's subject matter jurisdiction as sections 1338, 2201 and 2202 of Title 28 of the United States Code "and under this Court's pendent jurisdiction over related state claims arising under the same operative facts and circumstances pursuant to 28 U.S.C. § 1367." [Doc. 23 at ¶ 3]. Because the only possible state law claim added by Maxchief was the tortious interference with business relations claim, Maxchief alleges this Court has jurisdiction over the claim pursuant to

---

[7] In Maxchief's Response, it cites Tennessee case law for the elements of this claim. [Doc. 30 at 9-10] (citing *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)).

14

section 1367. Maxchief never explicitly alleges that this Court has original jurisdiction over this claim.

The first time Maxchief alleges that this Court has original jurisdiction over this state law claim is in its Response, [Doc. 30 at 9-10]. It appears to this Court that Maxchief changed courses when it realized doing so might be the only way to subject W&P to this Court's jurisdiction, possibly anticipating the lack of personal jurisdiction over the federal claims that conferred subject matter jurisdiction on this Court. The proper way to allege the basis for jurisdiction is in a complaint. If that basis changes, then the complaint should be amended. Maxchief failed to seek to amend the Amended Complaint. That being said, this Court realizes that "[t]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings," *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016) (quoting *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999)). Nevertheless, "[d]enial of leave to amend may be appropriate when there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, allowing such amendment could unduly prejudice W&P because such amendment could create subject matter jurisdiction which could then create personal jurisdiction over it where none would otherwise exist. In this particular factual scenario, the Court cannot allow Maxchief to change the basis of the subject matter jurisdiction for the state law tortious interference with business relations claim. Accordingly, because there is no independent federal basis for subject matter jurisdiction on this claim, the Court need not reach the issue of whether the Court has personal jurisdiction. *See Avocent*, 552 F.3d at 1340-41; *Silent Drive*, 326 F.3d at 1202-03. Nevertheless, the Court will discuss the merits of the issue, albeit briefly.

Title 28 of the United States Code section 1338 states in subsection (a), "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338. Maxchief argues that this Tennessee state tort law

15

claim is subject to the Court's original jurisdiction because its right to relief "necessarily depends on resolution of a substantial question of patent law." *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993); *see also* 28 U.S.C. § 1338. To determine whether Maxchief is correct, the Court must analyze the elements of the offense in relation to Maxchief's allegations and then determine whether the right to relief necessarily depends on the resolution of a substantial question of patent law.

The elements of the Tennessee tort of intentional interference with business relationships are:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citations omitted). In the Amended Complaint, Maxchief alleges:

> 62. Maxchief has business relationships, either directly or indirectly through its distributors, with Ace, APEX, Staples, Meco, Coleman, Samsonite, Wal-Mart, Ameriwood, Lowe's, and Office Star Products (hereinafter "Maxchief's Customers").
>
> 63. Wok & Pan has intentionally and willfully calculated to cause damage to Maxchief's business relationships with Maxchief's Customers by sending objectively and subjectively baseless assertions of patent infringement to such Customer's [sic] alleging that Maxchief's folding tables infringe Wok & Pan's patents, by sending assertions of patent infringement to Ace alleging that Maxchief's folding tables infringe an expired patent, and by filing frivolous lawsuits against Staples, Lowe's, and Office Star Products including objectively and subjectively baseless claims for patent infringement arising from sales of Maxchief's folding tables.
>
> 64. Wok & Pan's actions alleged in this Complaint were done with an intent to damage Maxchief's business relationships and to cause a termination of such relationships.
>
> 65. Wok & Pan's acts, as alleged in this Complaint, were done in bad

16

> faith with the unlawful purpose of causing damage to Maxchief.
>
> 66. Wok & Pan had no right or justifiable cause for its conduct.
>
> 67. The foregoing acts of Wok & Pan have caused Maxchief irreparable harm. Unless enjoined, Wok & Pan's acts alleged herein will continue to cause Maxchief irreparable harm, loss and injury.

[Doc. 23 at ¶¶ 62-67]. In sum, Maxchief bases its allegations on the infringement letters and the lawsuits and argues these constitute "the defendant's improper motive or improper means." *Trau-Med*, 71 S.W.3d at 701 n.5 (stating that improper motive or means includes "unfounded litigation" and "misrepresentation or deceit"). To determine whether the litigation is "unfounded," Maxchief argues that the Court would need to decide whether Maxchief infringed upon W&P's patents. Despite such attenuating circumstances, Maxchief could be correct.

Nevertheless, assuming *arguendo* that the Court does have original jurisdiction over this claim, the Court would still need personal specific jurisdiction over the claim. In order to determine whether the Court has personal specific jurisdiction, the Court would need to apply Federal Circuit law because this non-patent issue (as argued by Maxchief) is intimately linked to patent law. *See Avocent*, 552 F.3d at 1340 (quoting *Breckenridge*, 444 F.3d at 1362). The Court reaches this conclusion despite Maxchief's argument that the Court apply the *Calder* effects test.[8] *See* [Doc. 30 at 12 and 14]; *see also Calder*, 465 U.S. 789, 791. The Court would apply *Calder* pursuant to Sixth Circuit case law if the issue were a non-patent issue. *See Silent Drive*, 326 F.3d at 1201 (stating the issue of personal jurisdiction with respect to **non-patent** issues are governed by the law of the regional circuit) (emphasis added).

Maxchief cannot have it both ways. The tortious interference with business relations claim is either intimately related to patent law, in which case the Court applies Federal Circuit law, or the claim is a non-patent issue where the Court applies *Calder* via Sixth Circuit law. If the claim is a non-patent issue, then this Court lacks subject matter jurisdiction over the claim because all federal issues have been dismissed. *See Avocent*, 552 F.3d at 1340 (confirming the district court's dismissal of the state law claim because it did not have personal jurisdiction over the patent claim or Lanham Act claim). If the claim is a patent claim, then, for the reasons stated above, this Court lacks personal

---

[8] The Court acknowledges that *Avocent* cites and discusses *Calder*; however, the *Avocent* Court does not apply *Calder* to the patent issues or the issues intimately related to patents.

17

jurisdiction because Maxchief has failed to allege "sufficient activities related to the claim of patent non-infringement and invalidity" to support an assertion of specific personal jurisdiction. *Id*. at 1340; *Silent Drive*, 326 F.3d at 1202.

Furthermore, policy issues support the Court's decision. In *Silent Drive*, the Court applies *Calder* via Eighth Circuit law in determining whether that court had personal jurisdiction over a declaratory judgment claim relating to a state court injunction. 326 F.3d at 1203-06. The *Silent Drive* Court reiterated the policy behind patent law uniformity and patent declaratory judgment claims and how that is different from a declaratory judgment action regarding a state court injunction. *Id*. at 1206. The court stated:

> In this circuit, we have repeatedly held that the sending of infringement letters would satisfy the minimum contacts requirement of due process except for policy considerations unique to the patent context. In *Red Wing*, we explained that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." The patent system has national application. If infringement letters created jurisdiction, the patentee could be haled into court anywhere the letters were sent. No such countervailing policy exists with regard to state court injunctions, which are designed to operate primarily in the forum. Seeking to extend the injunction's effect beyond the boundaries of the forum is not an activity that merits special protection, and no case has been called to our attention that suggests otherwise.

*Id*. (citations omitted).

For these additional reasons stated above, the Court finds it cannot exercise jurisdiction over the tortious interference with business relations claim.

### B. Whether this Court has Pendent Jurisdiction

Maxchief argues that this Court has pendent jurisdiction over the declaratory judgment claims and the unfair competition claim as a result of this Court's independent subject matter and personal jurisdiction over the tortious interference claim. However, this Court has determined there is no independent jurisdiction over the tortious interference claim. If there is not independent jurisdiction over the tortious interference claim, then there cannot be pendent jurisdiction over the remaining claims. In sum, if there is no independent subject matter and personal jurisdiction as to any of the claims, then there cannot be pendent jurisdiction. *See* 28

18

U.S.C. § 1367; *see also Avocent*, 552 F.3d at 1340-41; *Silent Drive*, 326 F.3d at 1206.

### C. Whether the Court Should Transfer Venue

W&P, alternatively, moves to transfer venue pursuant to Title 28 United States Code section 1404(a). "However, because the court does not have personal jurisdiction over the defendant, it may not transfer this case pursuant to Section 1404(a)." *Harris v. Lloyds TSB Bank PLC*, No. 3:09-0650, 2009 WL 3048639, at *6 (M.D. Tenn. Sept. 17, 2009) (citing *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir.1993)). Section 1631 is the appropriate statute. It states that "when a district court 'finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer' the case 'to any other such court in which the [case] . . . could have been brought at the time it was filed or noticed.'" *Id.* (quoting 28 U.S.C. § 1631). First, W&P moved in the alternative, and this Court granted relief on the initial grounds sought. Second, W&P failed to move under the appropriate statute. Thus, this Court declines to decide the issue.

### D. Whether the Unfair Competition Claim Should be Dismissed

Finally, W&P also alternatively moved to dismiss the unfair competition claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court need not reach this issue either for that claim has been dismissed for want of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, W&P's Motion to Dismiss [Doc. 28] is GRANTED. Accordingly, Maxchief's Amended Complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

ENTER:

                                    s/ J. Ronnie Greer
                                  United States District Judge